GEORGE KETCHAM et al., respondents,

*v.*

HYPPOLITE A. DERAISMES et al., appellants.

[Decided February 9th, 1922.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

*93 N. J. Eq.* Ketcham *v.* DeRaismes. ·

"Complainants seek an accounting of money received by defendants for the conveyance of lands to the city of Newark, in which the complainants had some title or interest.

"On the hearing it was established that in April, 1915, the defendant Hyppolite A. DeRaismes called on complainants and informed them that they were the owners of, or entitled to some interest in, a small tract of meadow land, of little value, of which their ancestor, Jonathan David Ketcham, had died seized in 1865; that they then signed a paper, which proved to be the agreement and power of attorney hereafter referred to; that they did not know that this paper was made to the defendant Raoul H. DeRaismes, the son of Hyppolite; that they had never heard of him, and that they thought they were dealing with Hyppolite.

"When this paper was signed, complainants understood it authorized Hyppolite A. DeRaismes to look up their interests in the meadow land and that whatever was realized therefrom he was to receive, according to the testimony of some of complainants, one-half of the proceeds.

"On March 6th, 1918, DeRaismes had complainants execute two deeds for the property to his son Alfred DeRaismes, and these deeds were acknowledged before DeRaismes as a commissioner. Some of the complainants did not know that they were executing deeds for the property, and thought they were signing a power of attorney to DeRaismes; and it appears that none of them knew that the deeds were made to Alfred DeRaismes, and none of them were informed by DeRaismes of the purpose for which the papers were executed. On April 20th, 1920, DeRaismes, through his son Alfred, contracted with the city of Newark to convey this Ketcham property of three and fifty-four hundredths acres, and other tracts, totaling forty-seven acres, for $1,500 an acre.

"It further appears that some years before DeRaismes approached complainants on the subject, the Ketcham tract had been sold for unpaid taxes to a land company, and that the city, under an agreement with the land company, made in 1917, redeemed the tax ·certificate on this tract by the payment of

$393.01, which was deducted from the price of $5,310 paid by the city to Alfred DeRaismes for this property, leaving the net amount realized by Hyppolite DeRaismes from the sale $4,-916.99. Of this sum DeRaismes divided $1,693.33 among complainants and he retained the balance as his compensation, under the agreement hereafter referred to.

"DeRaismes admits that complainants never met his sons; that the agreement and power of attorney and the deeds were made to them, for his benefit, and it appears that he never informed complainants that he had sold, or contemplated selling, the property to the city, nor did he ever tell any of complainants the amount he realized from this sale.

"Hyppolite DeRaismes, who is the active and actual defendant, claims complainants are not entitled to an accounting, and that they have received all they are entitled to, under the terms of their contract with his son Raoul, in which he claims they agreed to accept from him

" 'the one-third part of any share [of theirs] of any and all net recoveries, net settlements and net collections he may make or effect, or which may be made or effected by any action at law or in equity in said matter or matters ;'

and, because by the contract, in consideration of one dollar, they did thereby

" 'assign, convey and set over to said Raoul H. DeRaismes the equal two-thirds part of all and every such net recoveries, net settlements and net collections which may be made by him amicably or by or through any litigation.'

"This contract was admittedly prepared by, or under the direction of, Hyppolite A. DeRaismes, and its objects and purposes are disclosed by the foregoing provisions and by the recitals which he embodied in the agreement. The first recital refers to the death of Jonathan Ketcham; the second, to the relationship to him of complainants; the third is as follows:

" 'And whereas, Raoul H. DeRaismes of, &c., is of the opinion that there possibly may be some small interest belonging to us in some matters

in which said Jonathan Ketcham once had some rights or interest, but which can be ascertained and determined only by extended examination, proof and possible litigation; now, we * * * do hereby authorize the said Raoul H. DeRaismes to make any and all examinations, proofs and settlements of our rights, title and interest he may deem necessary, and to conduct any litigation he may deem proper, and to do so in our names or otherwise, but always at the expense and cost of the said Raoul H. DeRaismes, said costs and expenses, however, to be made first chargeable to and paid from any recovery, settlement and collection when made;'

then follow the provisions, above quoted, for the division among the parties of any net amount recovered, settled for or collected.

"Upon the admission of this contract in evidence, and on the conclusion of the testimony of Mr. Wolber, the city attorney, by which it appeared, as well as from the testimony of DeRaismes, himself, that with respect to this property there had been no litigation and no recovery, collection or settlement of any kind, and that all DeRaismes had done was to effect a sale of this property to the city after a number of calls on, and conferences with, officials of the city, in which the price to be paid for the sale of this and the other properties mentioned was discussed, I then announced that the contract by its terms did not apply to the compensation DeRaismes was entitled to receive for effecting a mere sale of the property to the city, as by no stretch of language could the word 'sell' be regarded as a synonym for 're-covery, settlement or collection,' as used in this contract.

"On the conclusion of the case, at the request of counsel for defendants, I refrained from announcing any decision, in order to enable them to file a brief that would establish defendants' contention, that under the terms of this contract he was entitled to retain as his compensation two-thirds of the amount realized from the sale of the property.

"I have considered the brief and supplemental brief which counsel filed with me and have also studied the contract, with the result that I am confirmed in the conclusion tentatively announced.

"DeRaismes, in his anxiety to conceal from complainants the real value of their property, and his intention to sell the same to the city, created imaginary doubts and defects of their title and

32

interest, and vaguely referred to net recoveries, net settlements and net collections, and to litigation at law or in equity to give the impression that to obtain anything for them he would have to use much time and expend great effort, and, possibly, incur costs and expense, which he would be obliged to pay, and for the reimbursement of which he would have to look to the amount he recovered or collected. All of this was done to give a fictitious value to his services, so that his exaction of two-thirds of the amount he recovered, settled for or collected would not seem exorbitant. In the form of agreement which he had complainants execute, to effectuate his purpose, he deliberately omitted therefrom any authority for him to effect an ordinary sale of the property and also any provision for his compensation in effecting such sale.

"In this comment I am not unmindful of the provision in the power of attorney that he [Raoul] is authorized to bargain and sell; the agreement does not state what, but, presumably, this property; and the further provision that he is authorized to make and deliver deeds and conveyances for all the right, title and interest of complainants, but such authority is expressly limited and could only be exercised by the terms of the contract and power of attorney, 'for the further and better carrying out of this agreement. * * * and as shall be necessary to aid in bringing about any recovery, sale, collection or settlement.' De-Raismes, apparently, considered his power of sale limited to these objects, because he did not attempt to convey the property to the city, nor even to contract to convey it, in the exercise of this power. He had complainants convey the property to his son Alfred, who, when thus vested with the title, contracted to sell, and later conveyed the property to the city.

"Defendants' answers charge that complainants fraudulently concealed from them the fact that the children of Mary Higgins, deceased, had an undivided one-eighteenth interest in the property which was not conveyed to the city, and they ask that two of the complainants, Mrs. Kearney and Jonathan Ketcham, be decreed to pay to them a sum proportionate to such interest, so that they may pay the same to the city.

"No proof was offered to establish this interest of the Higgins children, although it is not denied by complainants; and the only evidence to support the charge of concealing this interest is the testimony of DeRaismes, who states Mrs. Kearney told him these children had no interest in the property; Mrs. Kearney denies this and states she told him of the children's interest. Whether she did or not is not material, because, presumably, the city paid for only such interests in the property as Alfred De-Raismes was able to convey to it; and if any one has been injured by the suppression of information about the Higgins interest, it has not been the defendants.

"I will advise a decree for an accounting, as prayed for, in which the defendants are to be credited with all moneys paid to, and distributed by, them among complainants out of the purchase-money received by them for the property."

*Mr. John Francis Cahill* and *Messrs. Church, Harrison & Roach,* for the respondents.

*Mr. William P. Hurley,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—13.

*For reversal*—None.